FILED
$\mathcal{B} \sim$

05 DEC -8 PM 4:36

MIDDLE DISTRICT COURT
TAMPA, FLORIDA

**FILED *EX PARTE* UNDER SEAL**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CASE NO. 8'05-cv-2255-T30T6W

NORTEL NETWORKS LIMITED, a Canadian
corporation and NORTEL NETWORKS INC, a
Delaware corporation,

 Plaintiffs,

v.

A1 TELETRONICS, INC., a Florida
corporation, and AMERICA II
ELECTRONICS, INC., a Florida corporation,
a/k/a America II Group Corp.,

 Defendants.

_____/

## **VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs Nortel Networks Limited and Nortel Networks Inc., sue Defendants A1 Teletronics,

Inc., and America II Electronics, Inc., and as grounds therefore state:

### **NATURE OF THE ACTION**

1. This is an action by Nortel Networks Limited and Nortel Networks Inc. (collectively

"Nortel") against A1 Teletronics, Inc. ("A1 Teletronics") and America II Electronics, Inc., a/k/a

America II Corp., Inc. ("America II"), to enjoin them from continued: (a) infringement, use and

disclosure of Nortel's copyright-protected and proprietary software program, GenKey Application

Software ("GenKey Software"); (b) infringement of Nortel's federally registered trademarks; (c)

unfair competition with Nortel in violation of the Lanham Act and common law; (d) deceptive and



unfair trade practices; (e) injury to Nortel's business reputation and dilution of its federally registered trademarks; (f) use and disclosure of trade secrets and confidential and proprietary information misappropriated from Nortel; and (g) tortious interference with Nortel's advantageous business relations; and to compel the return of Nortel's copyright-protected, confidential and proprietary information that they accessed, obtained and/or retained, principally in electronic form. Nortel also seeks preliminary injunctive relief pending a decision of this Court and monetary damages caused by Defendants' conduct.

## PARTIES

2.      Plaintiff Nortel Networks Limited ("NNL") is a company organized and existing under the laws of Canada.

3.      Plaintiff Nortel Networks Inc. ("NNI") is a company organized and existing under the laws of Delaware.  NNI is a United States subsidiary of NNL, and is registered to do business in the State of Florida.

4.      A1 Teletronics, a company organized and existing under the laws of Florida, maintains its principal place of business at 1010 118th Avenue North, St. Petersburg, Florida 33716. A1 Teletronics also maintains a location for its Vice President of Strategic Sales and Marketing, at 17 Oakwood Drive, Medford, New Jersey 08055-8848.  Upon information and belief, this location is also the Vice President's residence.

5.      A1 Teletronics is a subsidiary of and controlled by America II.

6.      America II is a company organized and existing under the laws of Florida and maintains its principal places of business at 2600 118th Avenue North and 2500 118th Avenue North, St. Petersburg, Florida 33716.  Upon information and belief, the business and sales office for

2

America II and A1 Teletronics are located at these locations.  Upon information and belief, America II is also known as America II Group Corp.

## JURISDICTION AND VENUE

7.    The Court has jurisdiction over this action pursuant to 17 U.S.C.A. § 101, *et seq.* and 15 U.S.C.A. § 1051, *et seq.* which provide for civil remedies, including injunctive relief and damages, for copyright infringement, for trademark infringement, trademark infringement, false designation of origin, and unfair competition.  Thus, this Court has federal question jurisdiction pursuant to 28 U.S.C.A. §§ 1331 and 1338(a) and (b).

8.    This Court may exercise supplemental jurisdiction over all related state law claims under 28 U.S.C.A. § 1367.

9.    Venue is proper in this district pursuant to 28 U.S.C.A. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred in this district, or a substantial part of the property that is the subject of the action is situated in this judicial district.  Venue also lies in this district pursuant to 28 U.S.C.A. § 1391(b)(3) because A1 Teletronics and America II are corporations organized and existing under the laws of the State of Florida, and they maintain their principal places of business in St. Petersburg, Florida.

## FACTUAL ALLEGATIONS

**A.    Nortel is an Industry Leader and Innovator in the Telecommunications Industry.**

10.    Nortel is an industry leader and innovator in the field of global telecommunications and conducts business in more than 150 countries.

11.     Nortel's core products include telecommunication systems for business users ("Nortel Systems" or "Nortel Products"). Nortel Systems are comprised of both the equipment, i.e. hardware, and software.

12.     Nortel invests substantial time, resources and capital in the research, development and marketing of new innovative products, upgrades and enhancements for Nortel Systems and Nortel Products, and into the development of proprietary software applications, such as GenKey Software, that generate unique codes ("Software KeyCodes") to unlock (activate) the functionality of its products, upgrades and enhancements.

13.     Nortel Systems and Nortel Products are identified by trademarks, including NORTEL Trademarks.

14.     Two of Nortel's most innovative and successful products are (a) Nortel Networks Norstar®, which supports up to 240 telephones and has the ability to drive multiple integrated applications ( "Norstar® Products"), and (b) Business Communications Manager systems ("BCM System"), which has achieved the top North American market share in its category.

15.     Some Norstar® applications (including voicemail), and a wide variety of BCM products are sold on the basis of channels (also referred to as ports or mailboxes). The number of channels and other feature capabilities of the base units of these products can be expanded using keycodes which are proprietary to Nortel Networks. For example, a business customer would purchase a BCM System with a base number of ports that allow a certain number of persons to use the system, e.g. 40 office phones that are integrated into one system with various features. A unique Software KeyCode is required to activate each port, mailbox, feature or bundle of features purchased for the BCM System.

16.     Nortel Products are designed to recognize and be activated by Software KeyCodes. Through these Software KeyCodes, generated by GenKey Software, Nortel and its authorized distributors are able to expand and enhance Nortel Systems for current business users. Consequently, GenKey Software is an extremely valuable asset.

17.     The ability to upgrade and expand the number of features and ports with Software KeyCodes is one of the most valued and desirable applications sought by business customers. With this capability, existing business customers purchase a base telecommunications system with the knowledge that their future telecommunications requirements can be achieved without the expense of acquiring a new system and without the disruption to a growing business that might result from the installation of new and unfamiliar telecommunications systems.

18.     A large portion of Nortel's revenues are derived from existing business customers whose decision to purchase their Nortel Systems was based, in part, on upgrades and enhancements available through Software KeyCodes. These customers have become familiar with the advantages, quality and reliability of Nortel's feature-rich products and services.

19.     Software KeyCodes generate over $40 million in revenue annually for Nortel, and as the company progresses towards more software-oriented products, this number is expected to grow dramatically.

20.     The GenKey Software is at the center of Nortel's KeyCode technology.

21.     The multi-step process for expanding or enhancing a Nortel System begins when a business customer orders an authorization code ("Authorization Code"), for a specific feature or enhancement from an authorized Nortel distributor. The authorized distributor then purchases the Authorization Code from Nortel. With this Authorization Code, the distributor accesses Nortel's

Key Retrieval System ("KRS"), inputs the Authorization Code and obtains the Software KeyCode that unlocks and activates the ordered feature's functionality.

22.     When Nortel receives an Authorization Code order, Nortel invoices its distributor who, in turn, invoices the business customer.  This  revenue mechanism ensures the financial viability of Nortel and its authorized distributors.

23.     After the Nortel distributor receives the Authorization Code and completes the process for obtaining the Software KeyCode, the revenue mechanism has served its purpose, and the Authorization Code is no longer functional.

**B.     GenKey Software Is Proprietary Software Owned By NNL And Protected By Registered Copyright Registration No. 1021288.**

24.     NNL owns GenKey Software, protected by a registered copyright, Registration No. 1021288, under Canadian copyright law.[1]

25.     Because of its unique, valuable and proprietary nature, Nortel has gone to great lengths to protect its GenKey Software.  In addition to copyright protection,  the mechanisms employed by Nortel include, but are not limited to the following:

a.      Access to GenKey Software is limited to Nortel employees or agents who are bound by confidentiality agreements required to be signed upon commencing employment at Nortel;

b.      The ability to generate Software KeyCodes, through GenKey Software, also is strictly limited to Nortel employees, agents and authorized Nortel distributors;

c.      With the Authorization Code purchased from Nortel, the distributor accesses Nortel's password-protected KRS, through a Nortel Internet web site, and

---

[1]All documents referred to herein, including but not limited to the GenKey Software copyright and NORTEL Trademarks, are attached as Exhibits to the Declarations of Kevin McGuire and Peter Hlavnicka.

inputs the Authorization Code. KRS validates the Authorization Code and utilizes the complex GenKey Software algorithm to generate the Software KeyCode   corresponding to the specific feature associated with the Authorization Code. The Nortel distributor then prints out or downloads the Software KeyCode which is then entered into the Nortel System and unlocks and activates the Nortel System's feature;

d.       KRS also creates and stores a log file, used as software registrations for each Software KeyCode, that enables Nortel to track the RTU (right to use) and retrieve information including when and who generated a Software KeyCode;

e.       Authorization Codes are packaged to ensure that the code number is not visible during the shipping process. Because the unique Authorization Code can cost up to $10,000, and can be used only one time, it is packaged with an installation guide and placed in a heat sealed plastic bag ("Nortel Shrink-Wrapped Package").      Although heat-sealing or shrink-wrapping Authorization Codes is an elaborate and expensive process for Nortel, it provides the greatest security and protection for Authorization Codes; and

f.       Nortel constantly monitors the internet to identify unauthorized dealers advertising Nortel Systems and Software KeyCodes required to unlock or activate product features and enhancements.

## C.    Nortel's Registered Trademarks

26.    NNL uses trademarks in connection with its telecommunications systems, and owns

federal trademark registrations for a family of NORTEL marks that include:

a.       The mark NORTEL registered with the United States Patent and Trademark Office as Registration No. 2,001,714, on September 17, 1996. The mark NORTEL covers a wide variety of telephone and telecommunication equipment;

b.       The mark NORTEL (stylized) registered with the United States Patent and Trademark Office as Registration No. 2,184,321, on August 25, 1998. The mark NORTEL covers a wide variety of telecommunication equipment;

c.       The mark NORTEL NETWORKS registered with the United States Patent and Trademark Office as Registration No. 2,757,769, on September 2, 2003. The mark Nortel Networks cover a wide variety of telecommunication equipment

7

d.     The mark NORTEL NETWORKS (stylized) registered with the United States Patent and Trademark Office as Registration No. 2,663,562 on December 17, 2002. The mark NORTEL covers a wide variety of telecommunication equipment.

The registrations are now valid and enforceable. (The trademarks are referred to individually as "NORTEL Mark" and "NORTEL NETWORKS Mark," and collectively as "NORTEL Trademarks.")

27.     In addition to federal trademark registrations, Nortel protects its NORTEL Trademarks and the consuming public through, among other means, constant monitoring of the internet to identify unauthorized dealers offering Nortel Systems and new equipment.

## D.     Possible Unauthorized Dealers of Software KeyCodes for Nortel Products Are Identified

28.     As the result of an internet search, A1 Teletronics was identified as a possible unauthorized dealer of Nortel Products.

29.     Nortel also discovered that America II controls virtually every aspect of A1 Teletronics' operations. Examples of this control are as follows:

a.     America II is the registrant owner of the www.a1teletronics.com web site, and holds copyrights on the contents and substance on the www.a1teletronics.com web site;

b.     On America II's web site, A1 Teletronics is identified as a member of "the America II family of companies... [that] includes eight operations worldwide specializing in the independent distribution of electronic components and telecommunications equipment;"

c.     As reported to Dunn and Bradstreet, America II's CEO owns 100% of A1 Teletronics;

d.     America II's CEO and Founder, General Counsel and Secretary of Human Resources, CFO and Treasurer and CIO provide financial, leadership, and information technology support to A1 Teletronics;

e.      Individuals interested in a career with A1 Teletronics apply directly to America II's Human Resource Department.

30.     On America II's www.a1teletronics.com.web site, A1 Teletronics is represented as an "independent distributor of telecommunications products and services." The products include Norstar® and BCM Systems. America II's www.a1teletronics.com. web site also advertises Nortel's BCM System with "Up to 16 voice channels and 1000 mailboxes," and Nortel's multi-media communications solution, CallPilots, with a specific number of mailboxes that "*can be expanded.*" (Emphasis added.)

31.     On each web page on the www.a1teletronics.com web site that references Nortel Systems and Nortel Products, America II used the ® symbol to denote federal registration, and the admission that "Nortel® is a registered trademark of Nortel Networks Ltd."

32.     America II also knows the importance of sponsorship disclaimers and, in fact, includes disclaimers on its "A1 Independent Knowledge™" web page. A1 Independent Knowledge™ is "targeted product training on popular systems," and the web page contains an express disclaimer:

> Independent Knowledge™ is not sponsored or endorsed by or affiliated with Nortel Networks, [sic] Ltd. ...

33.     No such disclaimers are on web pages advertising Nortel Products and Systems.

34.     Because A1 Teletronics and America II are not and never have been authorized Nortel distributors, and Nortel does not authorize "independent distributors" to sell Norstar®, BCM or CallPilots, A1 Teletronics' purported access to system enhancements and software upgrades, was particularly troublesome. These expansions can be accomplished only through the authorized use of Nortel's GenKey Software to generate Software KeyCodes.

9

35.     As a result, Kevin McGuire, Senior Manager of Investigative Services and Corporate Security for NNL, authorized a pretext purchase of Nortel Products, including BCM Products and Authorization Codes which could be generated only through the use of Nortel's proprietary GenKey Software.

36.     Nortel's investigator purchased Nortel Products, including seven software authorization codes to be pre-loaded into the Nortel equipment.

37.     A1 Teletronics furnished Authorization Codes by facsimile, and in shrink-wrapped packages. The label, shape, configuration, packing, contents and use of NORTEL and NORTEL NETWORKS Marks were virtually identical to authentic Nortel Shrink-Wrapped Packages, with two significant differences. First, a pink label was affixed to A1 Teletronics' shrink-wrapped package. No such labels are affixed to any portion of an authentic Nortel Shrink-Wrapped Package. Second, this pink label advised that Authorization Codes could not be immediately activated, whereas Nortel's authorized distributors can activate Authorization Codes immediately upon receipt.

38.     Because Software KeyCodes were not pre-loaded as requested, Nortel's investigator again contacted A1 Teletronics. Within days, A1 Teletronics generated or, through otherwise unauthorized sources, was able to acquire Software KeyCodes and e-mail them to Nortel's investigator.

39.     Six of the seven Software KeyCodes were not registered in Nortel's KRS and were not generated legitimately through Nortel's authorized distribution channels. Despite being generated from unauthorized sources, when installed into BCM equipment also procured from A1 Teletronics, each unauthorized software keycode unlocked and activated features and enhanced the capacity of the BCM System.

40.     Consequently, through unauthorized means or sources, A1 Teletronics was able to generate, otherwise obtain and sell keycodes that unlocked and activated system features and expansions that could have been accomplished only through the authorized use of Nortel's GenKey Software.

**E.     Sales of Counterfeit Telephones and Unauthorized Copying of NORTEL Trademarks.**

41.     Nortel Products include telephones ranging from single-line telephones to telephones with features such as display-based interfaces, call log, self-labeling keys, and simplified administration, with a variety of accessories to meet diverse requirements for features, ease of use and productivity.  Nortel's telephone product line includes Norstar® and Meridian® telephones (collectively "Nortel Telephones").

42.     Nortel has developed fully defined and distinct specifications, standards and procedures, from manufacturing through distribution, to ensure the quality and reliability of each Nortel Telephone.  These same standards, specifications and procedures enable Nortel to identify and distinguish between authentic Nortel Telephones and unauthorized or counterfeit equipment.

43.     The authenticity of Nortel Telephones can be verified through product identifiers found, among other places, on back labels (labels affixed to the back or bottom of Nortel Telephones), shipping labels affixed to boxes in which individual telephones are shipped (collectively "Product Labels"), and hologram warranty labels ("Warranty Labels"), as well as from the physical appearance of telephone shells (main body/plastic cover).  Examples of these identifiers include (a) font type, barcode/text and word alignment, and label placement; (b) Product Engineering Codes ("PEC" or "Product Codes"); (c) unique serial numbers assigned to a specific manufacturer

by Nortel that identifies each telephone within the model or series product line; and (e) print on telephone shells that is country-specific.

44.      Through America II's www.a1teletronics.com.web site, A1 Teletronics was identified as a possible unauthorized dealer of Nortel telephone products such as Norstar® and Meridian telephones ("Nortel Phones") and new equipment. A pretext purchase was made for Norstar® Series T7316E Telephones ("Series T7316E Phones"), Meridian M3903 Enhanced Rel3 telephones ("Meridian Phones") and a Digital Line Card ("Line Cards".)

45.      The products procured from A1 Teletronics were identified by Product Codes, model or series number, and unique serial numbers.

46.      Serial numbers for the Meridian Phones were traced to an authorized manufacturer and were valid.

47.      However, serial codes, with an NNTMAB starting sequence, for the Series T7316E Phones, could not be found with any Nortel-authorized manufacturers. In fact, the NNTMAB starting sequence is not assigned to any Nortel-authorized manufacturer or for Nortel product. Nor could a serial number be found for the Line Card.

48.      The physical appearance of the Series T7316E Phones also was suspect. Although the NORTEL NETWORKS Mark is printed on the telephones and on their Product Labels, none of the Series T7316E Phones had Warranty Labels, and the area wherein the Warranty Labels should have been placed showed apparent "activity," i.e. some kind of clean up that may have been caused by the removal of Warranty Labels. Without valid Warranty Labels, Nortel warranties are void and, customers cannot obtain Nortel-authorized support for this equipment.

12

49.     Secondly, the words Hold, Release and Features are printed on the telephone shells. These words, however, are not characteristics of Series T7316E Phones authorized for sale in North America.  They were characteristic of Series T7316E telephones manufactured, under a different Product Code, for sale only in China, Taiwan, Hong Kong and Macau.

50.     Finally, the A1 Teletronics' labels could not have been printed by or obtained through authorized Nortel sources.  In addition to invalid serial codes and physical appearances of telephones that did not match Product Codes, these labels did not have the font type, word and barcode/text alignment and placement required for and found on authentic Nortel Product Labels affixed to Series T7316E Phones.

51.     From these findings, Nortel determined that the Series T7316E Phones procured from A1 Teletronics were not authorized for sale in North America and/or were counterfeit copies of authentic Norstar® Series T7316E Telephones.

## COUNT I
## Copyright Infringement (17 U.S.C.A. § 101 et seq.)

52.     Nortel realleges and incorporates the allegations in paragraphs 1 through 51 as though fully set forth herein.

53.     This is an action for injunctive relief and damages for copyright infringement under 17 U.S.C.A. § 101, *et seq*.

54.      NNL's protected GenKey Software is entitled to protection under the copyright laws of the United States, pursuant to the Berne Convention, of which the United States and Canada are signatories.

13

55.     As set forth herein, by its unauthorized use and/or copying of GenKey Software, A1 Teletronics has infringed and will continue to infringe Nortel's copyrights in and relating to its GenKey Software.

56.     In fact, by its infringing use of GenKey Software, A1 Teletronics was able to place into interstate commerce Software KeyCodes that unlock the functionality of Nortel Systems, without having made any financial investment in research and development, and deriving an almost 100% profit.

57.     America II is directly liable for the unlawful acts of its subsidiary A1 Teletronics.

58.     Alternatively, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and derives financial benefits from A1 Teletronics' infringing acts.

59.     Defendants have engaged in these acts of infringement knowing that Nortel has the exclusive rights to the copyright-protected GenKey Software and intending to deprive Nortel of sales and revenue.

60.     Nortel has no adequate remedy at law and is suffering irreparable harm and damage as a consequence of Defendants' unlawful acts.

61.     Unless preliminarily and then permanently enjoined by this Court, Defendants' unlawful conduct will continue.

62.     Nortel is further entitled to recover from A1 Teletronics and America II the damages that Nortel has sustained and will sustain as a result of the infringing acts described herein as well as the gains, profits, and advantages Defendants obtained through of their wrongful acts.

14

## COUNT II
### Trademark Infringement (15 U.S.C.A. § 1051, *et seq.*)

63.     Nortel realleges and incorporates the allegations in paragraphs 1 through 51 as though fully set forth herein.

64.     This is an action for injunctive relief and damages for trademark infringement under 15 U.S.C.A. § 1051, *et seq*.

65.     Nortel's trademark registrations continue to be in full force and effect and have never been abandoned.  Further, NORTEL Trademarks, and the goodwill of Nortel in connection with which NORTEL Trademarks are used, continue to be in full force and effect and have never been abandoned.  Nortel intends to continue to preserve and maintain its rights in and to NORTEL Trademarks, and in their federal registrations.

66.     At all times prior and subsequent to the registration of NORTEL Trademarks, Nortel has taken reasonable and appropriate steps to protect its goodwill associated with its trademarks, including, among other things, giving appropriate notice of its trademark rights on Nortel Systems and Nortel Products, resource manuals and guides and in its advertising.

67.     America II and A1 Teletronics have knowingly infringed Nortel's trademarks through, among other things, the sale, offering for sale, distributing, selling and placing in interstate commerce goods bearing Nortel's federal trademarks.

68.     America II also is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and derives financial benefits from the infringing acts.

15

69.     At all times material, A1 Teletronics and America II had actual knowledge of Nortel's exclusive rights in the NORTEL Trademarks.

70.     Defendants' willful infringement of Nortel's trademarks has been accomplished by, among other means, the sale, offering of goods for sale or distribution to the public without advising customers that they are purchasing telephones, telecommunications systems and other products with an infringing trademark.

71.     At no time has Nortel given Defendants permission, license or consent to infringe upon or utilize Nortel's federal trademarks.

72.     Defendants' infringing use of NORTEL Trademarks is likely to cause confusion and mistake in the minds of the purchasing public and, in particular, tends to and does falsely create the impression that Defendants' goods are authorized, sponsored or approved by Nortel, when in fact, they are not.

73.     At all times material to this action, Defendants have infringed upon Nortel's trademarks and are continuing to infringe Nortel's trademarks knowingly, willfully, unlawfully, and with an intent to injure Nortel. Defendants' activities are in total disregard of Nortel's rights and were commenced and have continued in spite of Defendants' knowledge that the use of NORTEL Trademarks was and is in direct contravention of Nortel's exclusive rights.

74.     Nortel has no adequate remedy at law and is suffering irreparable harm and damage as a consequence of Defendants' actions.

75.     Unless preliminarily and then permanently enjoined by the Court, Defendants' will continue their infringing conduct.

16

76.     Nortel is further entitled to recover from A1 Teletronics and America II the damages that Nortel has sustained and will sustain as a result of the infringing acts as well as the gains, profits, and advantages Defendants obtained through of their wrongful acts.

## COUNT III
## Lanham Act Violations (15 U.S.C.A. § 1125(a))

77.     Nortel realleges and incorporate the allegations in paragraphs 1 through 51 as though fully set forth herein.

78.     This is an action for injunctive relief and damages for unfair competition under the Lanham Act, 15 U.S.C.A. § 1125(a).

79.     A1 Teletronics has done and continues to do business or offer products for sale in interstate commerce.

80.     At all times material, A1 Teletronics and America II had actual knowledge of Nortel's exclusive rights in the NORTEL Trademarks.

81.     Alternatively, at all times material, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and  derives financial benefits from A1 Teletronics' unlawful acts.

82.     Defendants have used Nortel's federal trademarks on telecommunications systems and products and have caused these products to be generated, sold, offered for sale or distributed in interstate commerce with the express intent to mislead the purchasing public, to trade on the reputation of Nortel and to improperly misappropriate Nortel's valuable trademark rights.

83.     In connection with the copying, manufacturing, production and distribution of infringing products bearing NORTEL and NORTEL NETWORKS Marks, Defendants have implied an association with or connection between Nortel and Defendants that does not exist.

84.     Nortel has never granted Defendants permission to manufacture, market, sell, distribute or use NORTEL and NORTEL NETWORKS Marks.

85.     Defendants' conduct is causing and is likely to cause confusion and is also likely to deceive others as to the origin of systems, products and telephones bearing NORTEL and NORTEL NETWORKS.

86.     Defendants acts were and are done intentionally and willfully, with a reckless disregard for the rights of Nortel.

87.     Defendants conduct irreparably injures Nortel's reputation and goodwill associated with its Nortel Systems, Products and Telephones, for which there is no adequate remedy at law.

88.     Defendants' acts have and will continue to irreparably injure Nortel.   Unless preliminarily and then permanently enjoined by this Court, Defendants will continue to compete unfairly with Nortel in violation of Section 43(a) of the Lanham Act, 15 U.S.C.A. §1125.

89.     Nortel is further entitled to recover from A1 Teletronics and America II the damages that Nortel has sustained and will sustain as a result of Defendants' wrongful conduct.

## COUNT IV
## Deceptive and Unfair Trade Practices (Fla. Stat. §§ 501.201 *et seq.*)

90.     Nortel realleges and incorporates the allegations of paragraphs 1 through 51 as though fully set forth herein.

91.     This is an action for injunctive relief and damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, *et seq.*

92.     Nortel is an "aggrieved" person under the FDUTPA and has standing to bring this claim.

93.     At all times material, America II is directly liable for the unlawful conduct of its subsidiary A1 Teletronics.

94.     Alternatively, at all times material, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and derives financial benefits from A1 Teletronics' unlawful acts.

95.     Defendants have engaged in unfair methods of competition and/or unfair and/or deceptive acts or practices in the conduct of their trade, all in violation of Fla. Stat. § 501.204.

96.     Defendants are unfairly trying to compete in the telecommunications services and products industry by infringing Nortel's valuable copyright-protected GenKey Software and NORTEL Trademarks, and by attempting to capitalize on Nortel's reputation by deliberately selling products and software generated keycodes that consumers are likely to believe are authentic Nortel products and/or that Defendants are authorized by Nortel to sell products to consumers.

97.     Nortel invested substantial resources to develop, test and market its keycode generated software and products. Defendants' passing off products and software generated keycodes as those of Nortel and attempt to literally steal the name and goodwill of Nortel constitute unfair methods of competition, unconscionable acts or practices and/or unfair or deceptive acts or practices in the conduct of the sale and distribution of telecommunications products and systems.

19

98.     Defendants' acts and practices as alleged herein offend public policy, were unethical, oppressive and/or unscrupulous and/or cause Nortel substantial unavoidable injury.  Accordingly, Defendants' acts and practices are deceptive under Fla. Stat. § 501.204.

99.     Pursuant to Fla. Stat. § 501.21(1), entry of an injunction to enjoin Defendants from continuing to violate the FDUTPA is necessary and appropriate .

100.    As a direct and proximate result of Defendants' unfair, unconscionable and/or deceptive acts or practices, Nortel has sustained losses and damages as more fully described herein.

101.    Nortel has suffered and is continuing to suffer irreparable damages, and is without adequate remedies at law.

102.    Unless preliminarily and then permanently enjoined by this Court, Defendants' unlawful acts will continue.

### COUNT V
### Unfair Competition Under Florida Law

103.    Nortel realleges and incorporates the allegations of paragraphs 1 through 51 as though fully set forth herein.

104.    This is an action for unfair competition under Florida's common law.

105.    At all times material, America II is directly liable for the unlawful conduct of its subsidiary A1 Teletronics.

106.    Alternatively, at all times material, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and  derives financial benefits from A1 Teletronics' unlawful acts.

107.    Defendants' copyright and trademark infringements are deceiving consumers who are likely to attribute to Nortel, Defendants' use of Nortel's trademarks as a source of origin, authorization and/or sponsorship for Defendants' products and to buy Defendants' products with that erroneous belief.

108.    Defendants have intentionally appropriated Nortel's trademarks with the intent of causing confusion, mistake and deception as to the source of its goods.

109.    Nortel has suffered substantial economic injury as a result of Defendants' unfair competition. In addition, Nortel continues to suffer irreparable injury for which there is no adequate remedy at law because the of the infringing conduct which, unless abated by an injunction, will continue.

110.    Defendants acted knowingly, willfully and unlawfully, and with the specific intent to deceive others and injure Nortel. This conduct justifies an award of punitive damages.

### COUNT VI
### Misappropriation of Trade Secrets (Fla. Stat. § 688).

111.    Nortel realleges and incorporates the allegations of paragraphs 1 through 51 as though fully set forth herein.

112.    This is an action under Chapter 688, Florida Statutes, for the misappropriation of Nortel's trade secrets.

113.    Because GenKey Software contains information not generally known to the public, or to other persons who can obtain economic value from its disclosure or use, is the subject of Nortel's efforts to maintain its secrecy, and derives independent economic value from not being

generally known, this information constitutes "trade secrets" under Florida's Uniform Trade Secrets Act. *See* Fla. Stat. §§ 688.01 - .009.

114.    A1 Teletronics misappropriated Nortel's trade secrets by acquiring those trade secrets when it knew or should have known that the trade secrets were being acquired from an individual or entity who owed a duty to Nortel to maintain the secrecy of its trade secrets or limit their use, or who acquired Nortel's trade secrets under circumstances giving rise to a duty to maintain their secrecy or limit their use, or by disclosing or using Nortel's trade secrets without Nortel's implied or express consent.

115.    At all times material, America II is directly liable for the unlawful conduct of its subsidiary A1 Teletronics.

116.    Alternatively, at all times material, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and  derives financial benefits from use of Nortel's misappropriate trade secrets.

117.    Defendants acts were and are done intentionally and willfully, with a reckless disregard for the rights of Nortel.

118.    Nortel has and will continue to suffer irreparable harm and damage that will be difficult to ascertain, and Nortel will be without an adequate remedy at law.

119.    Unless preliminarily and then permanently enjoined by this Court, Defendants' unlawful conduct will continue.

120.    Nortel is further entitled to recover from A1 Teletronics and America II that damages that Nortel has sustained as a result of the wrongful acts described herein.

121. Defendants' conduct of misappropriation was wanton, willful, and malicious, so as to justify the imposition of punitive damages.

## COUNT VII
### Tortious Interference With Advantageous Business Relations

122. Nortel realleges and incorporates the allegations of paragraphs 1 through 51 as though fully set forth herein.

123. By its conduct, A1 Teletronics has tortiously interfered with Nortel's advantageous business relations by wrongfully and tortiously attempting to solicit, divert, or induce Nortel's business customers to purchase product and services represented to be authorized and authentic Nortel Systems and Products, when in fact, they were not.

124. At all times material, America II is directly liable for the unlawful conduct of its subsidiary A1 Teletronics.

125. Alternatively, at all times material, America II is vicariously liable for the unlawful conduct of its subsidiary A1 Teletronics as America II was and is in a position to supervise and control the unlawful conduct and derives financial benefits from A1 Teletronics' unlawful acts.

126. Defendants' conduct constitutes wrongful and tortious interference with Nortel's advantageous business relations, was and is intentional, wrongful and without legal justification.

127. As a direct and proximate result of Defendants' conduct, Nortel has suffered irreparable injury for which it has no adequate remedy at law.

128. Unless preliminarily and then permanently enjoined by this Court, Defendants' unlawful conduct will continue.

129.    Nortel is further entitled to recover from A1 Teletronics and America II that damages that Nortel has sustained as a result of the wrongful acts described herein.

130.    Defendants acted knowingly, wilfully and unlawfully, and with the specific intent to deceive others and to specifically injury Nortel. This conduct justifies an award of punitive damages.

## COUNT VIII
### Unfair Competition - Cumulative Total of Defendants' Acts

131.    Nortel realleges and incorporates the allegations in Paragraphs 1 through 51 as though fully set forth herein.

132.    This is an action for damages by reason of the cumulative total of Defendants' conduct.

133.    The sum total of Defendants' conduct, taken either alone or in combination with the acts complained of constitutes unfair competition under the common law.

134.    Unless preliminarily and then permanently enjoined by this Court, Defendants' unlawful conduct will continue.

135.    Nortel is further entitled to recover from A1 Teletronics and America II that damages that Nortel has sustained as a result of the wrongful acts described herein.

136.    Defendants acted knowingly, willfully and unlawfully, with the specific intent to deceive others and to specifically injury Nortel. This conduct justifies an award of punitive damages.

### STATEMENT OF IRREPARABLE INJURY TO NORTEL

137.    Nortel has been and continues to be subjected to irreparable injury for which no remedy at law exists.

24

138.   Given the fierce competition within the telecommunications industry, and the sales and revenue at stake, the unlawful actions by Defendants, their agents and those acting in concert with them, are causing and will continue to cause great and irreparable harm to Nortel's business, as well as to the businesses of Nortel's authorized distributors, which cannot adequately be remedied by an award of monetary damages.

139.   Without this Court's intervention, there is a real, present and continuing threat that Defendants will continue to wrongfully use and disclose Nortel's copyright-protected GenKey Software, federally registered trademarks, and confidential and proprietary information in competition with Nortel or to tortiously interfere with Nortel's advantageous and prospective advantageous business relationships.

140.   The continued use of Nortel's confidential, proprietary and trade secret information and the sale of telephones represented as authentic Nortel Telephones, would cause Nortel actual, but unquantifiable and irreparable, harm for which Nortel has no remedy at law.

141.   Unless a preliminary and/or permanent injunction is entered by this Court directing the Defendants, their officers, agents and employees and those acting in concert with them, to cease from the actions and conduct described above, greater injury will be inflicted on Nortel than could possibly result to Defendants by the granting of injunctive relief.  Defendants will be harmed by the granting of the prayed-for injunctive relief only to the extent that the order will compel Defendants to abide by their statutory and common law obligations.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs Nortel Networks Limited and Nortel Networks Inc., respectfully request the entry of this Court's judgment against Defendants A1 Teletronics, Inc. and America II

Electronics, Inc., as to all counts of the Verified Complaint for Injunctive Relief and Damages as follows:

     A.     Pursuant to Federal Rule of Civil Procedure Rule 65(b), 17 U.S.C.A. § 502(a), 15 U.S.C.A. § 1116, and § 501.211(1), Fla. Stat. §§ 495.151 and 688.003, preliminary and permanent injunctions be issued barring Defendants, together with their officers, agents, employees, distributors, representatives and all others acting in concert with them who are provided actual notices of the Court's Order from:

     (i).     Directly or indirectly infringing Nortel's copyright-protected GenKey Software, and from continuing to generate, market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from the GenKey Software and from continuing to generate market, offer, sell, dispose of, license, lease, transfer, display, advertise, reproduce, develop or manufacture any works derived or copied from all other software for Nortel Systems, or to participate or assist in any such activity;

     (ii).     Directly or indirectly infringing Nortel's trademarks or any marks that are a colorable imitation thereof in connection with the manufacturing, marketing, sale, offering for sale or distribution of any goods or services;

     (iii).     Using any logo, trade name or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the services or products of Defendants or third parties are sponsored by, authorized by, or in any way associated with Nortel; and

     (iv).     Otherwise unfairly competing with Nortel.

     B.     Granting such other relief, including an order authorizing the seizure, impounding and destruction of infringing products, as may be appropriate to protect Nortel's copyright and trademarks.

     C.     Requiring Defendants to account to Nortel for any and all gains, profits and advantages derived by each Defendant from such conduct or, in lieu thereof, such statutory damages

as the Court shall deem proper within the provisions of the Copyright Act, including, but not limited

to, damages for willful copyright infringement pursuant to 17 U.S.C.A. §§ 101 *et seq*.

      D.      Requiring Defendants to account to Nortel for any and all gains, profits and

advantages derived by each Defendant from the sale of their infringing products and that the award

to Nortel be increased as provided under 15 U.S.C.A. § 1117.

      E.      Finding that this is an exceptional case within the meaning of 15 U.S.C.A. § 1117(a),

and that Nortel be awarded its costs and reasonable attorneys' fees.

      G.      Awarding, in its discretion, prejudgment interest on all damages awarded in this case

as provided by 15 U.S.C.A. § 1117(b).

      H.      Awarding compensatory, punitive and exemplary damages against Defendants and

in favor of Nortel.

      I.      Granting such other and further relief deemed proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b), Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury

on all issues so triable by right.

Respectfully submitted,

John N. Muratides
Florida Bar No. 332615
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
SunTrust Financial Centre
401 East Jackson Street, Suite 2200
Tampa, Florida 33602
Telephone:    (813) 223-4800
Facsimile:    (813) 222-5089
E-mail:       jmuratides@swmwas.com

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Attorneys for Nortel
New River Center, Suite 2100
200 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
Telephone:    (954) 462-9575
Facsimile:    (954) 462-9524
E-mail:  msall@swmwas.com

By: _____
          Mimi L. Sall
          Trial Counsel
          Florida Bar No.  436704

Date: 12/07/05

I:\W-LIT\05372 (Nortel Ltd)\001 (A1)\PLEADINGS\Complaint-V16.wpd

28

## VERIFICATION OF COMPLAINT

KEVIN McGUIRE, of full age, certifies as follows:

I am the Senior Manger of Investigative Services and Corporate Security for Nortel Networks Limited.

I have reviewed the Verified Complaint for Injunction and Other Relief and state that the factual allegations contained therein are true and correct. As to those allegations stated upon information and belief, I believe same to be true.

I further certify that if any of the allegations contained therein are willfully false, I am subject to punishment.

Dated: Dec 07/05

KEVIN McGUIRE